UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| EXPENSIFY, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>SWAPPOINT AG, et al.,<br><br>    Defendants. | Case No. 22-cv-05720-LB<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 13 |

## INTRODUCTION

This is a trademark dispute between plaintiff Expensify, a U.S. provider of expense-reporting services, and defendants Swappoint and Karmapoint, jointly owned Swiss providers of a mobile application and associated website. Expensify uses the "Karma Points" mark in connection with its corporate credit card to allow customers to direct the money value of their credit-card reward points to charitable causes. It alleges that it has common-law rights to the mark. The defendants have the U.S.-registered mark "Karmapoint" that they use in connection with their app, which allows users to accumulate points for good deeds. Expensify alleges that the defendants registered their mark in the U.S. (and around the world) to cover "an ocean of goods of services" that the defendants never intended to provide, the parties' uses of their marks are not confusingly similar, and Expensify's mark does not infringe the U.S. trademark registration owned by the defendants.

Expensify seeks a declaratory judgment of non-infringement, cancellation of the defendants' U.S. trademark, and liability for a false or fraudulent trademark registration.

The plaintiff asserts personal jurisdiction over the defendants under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2). The defendants moved to dismiss for lack of personal jurisdiction on the ground that they do not have minimum contacts with the U.S. forum. Expensify counters that the defendants' U.S. trademark registration is enough for U.S. courts to have personal jurisdiction, and in any event, their actions distributing their mobile app in the U.S. also establish jurisdiction. The court denies the motion to dismiss: there is personal jurisdiction.

## STATEMENT

### 1. The Parties and Their Products

Expensify is a U.S. corporation that creates a mobile and web-based application for expense management. The software "simplif[ies] expense reports for individuals, employees, and accountants." "Expensify has more than 12 million users and 53,000 customers across more than 169 countries."[1]

In 2020, Expensify introduced a corporate credit card with "traditional benefits," such as cash back and travel perks, and "less typical features," such as the "Karma Points" reward system. When a customer buys something with an Expensify credit card, "Expensify donates a portion of revenue to its charitable arm in the form of [Karma Points]." The Karma Points "contribute[] to important charitable causes, such as climate change, food security, housing equity, reentry services and youth advocacy." Expensify uses the moniker in connection with its credit card, including in marketing materials, and the "moniker featured prominently in press coverage of the card's rollout."[2]

Swappoint and Karmapoint are closely held Swiss corporations that allegedly are jointly owned by Umut Ertan.[3] Karmapoint is a subsidiary of Swappoint, and Mr. Ertan is the only board

---

[1] Compl. – ECF No. 1 at 4 (¶¶ 15–16), 6–7 (¶¶ 31, 34–35). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 7–9 (¶¶ 34, 36–39).

[3] *Id.* at 4–5 (¶¶ 17–18, 21).

member of each.[4] Karmapoint has a website (karmapoint.com) and a mobile application called the Karmapoint SW App.[5] The app is available on the Google Play store (with "only '50+' downloads" reported) and the Apple App store (with no user reviews yet received).[6] The app provides a "platform[] for users to create and maintain profiles and exchange recognition for good deeds and other acts."[7] The karmapoint.com website provides examples of such good deeds, such as cleaning around the house, changing a lightbulb, and tutoring.[8] The website describes the app:

> Exchange limited KARMACOINs for attractive vouchers or give Karma to motivate your fellow men and women at work, in projects or in organisations.
>
> Show joy and gratitude, give hope and trust and help to gain coveted Karma Levels, with which you can make your everyday heroes and heroines visible as Karma Superheroes.[9]

The defendants use the "Karmapoint" moniker only in connection with their website and app "as a token use."[10] The app "is available for free in the app stores for the major smartphone operating systems, and as such, the [Karmapoint] mark is indiscriminately directed toward individual users and consumers."[11]

The defendants do not "conduct marketing campaigns or other activities directed specifically to residents of California," "own or lease any real estate property in California," "maintain[] an office, employees, agents, or representatives located in California," "have an agent for service of process in California," "have a bank account in California," or "have a mailing address, post office box, or telephone number in California."[12]

---

[4] Ertan Decl. – ECF No. 13-1 at 2 (¶ 1).

[5] Compl. – ECF No. 1 at 5 (¶ 19).

[6] *Id.* at 13 (¶ 52).

[7] *Id.* at 19–20 (¶ 75).

[8] *Id.* at 20 (¶ 75) (website screenshot).

[9] *Id.* at 14 (¶ 52) (website screenshot).

[10] *Id.* at 3 (¶ 8), 19 (¶ 75).

[11] *Id.* at 20 (¶ 76).

[12] Ertan Decl. – ECF No. 13-1 at 2 (¶¶ 2–7).

ORDER – No. 22-cv-05720-LB                    3

In the parties' pending cancellation proceeding in the Trademark Trial and Appeals Board, the defendants responded to Expensify's requests for admissions and admitted (subject to objections) certain facts, such as that their website and app (and therefore their trademark) are available in the U.S. and have been accessed by computers in the U.S.[13]

### 2. The Parties' Trademark Prosecution

For two years before the complaint was filed on October 4, 2022, the parties had "extensive negotiations" about their trademark rights. The defendants have "unreasonably persist[ed] in an intransigent campaign to attenuate Expensify's commerce globally." They have done so "by first filing overly broad and inflated trademark applications around the world, with no intent of use," and then "opposing Expensify's bona fide trademark applications despite having no reasonable arguments that the two marks, as used, are confusingly similar."[14]

The timeline of the parties' trademark prosecution is as follows.

Swappoint applied for registration of its Karmapoint mark in Switzerland in December 2019, and the mark was registered on June 5, 2020. Swappoint then proceeded internationally through the Madrid Protocol.[15] It filed an application in the United States on the same day that its Swiss mark was registered: June 5, 2020.[16] The U.S. mark was registered on September 7, 2021.[17] The registration claims priority to December 9, 2019 (presumably, the date of the Swiss application).[18] It "identifies nine international classes associated with approximately [seventy-nine] distinct

---

[13] Pasquinelli Decl. – ECF No. 26-1 at 3 (¶¶ 14–16); Resp. to Reqs. for Admission, Ex. A to *id.* – ECF No. 26-1 at 21–25. Expensify submitted this evidence after the hearing and the court granted Expensify's administrative motion to augment the record. Order – ECF No. 28.

[14] Compl. – ECF No. 1 at 2 (¶ 2), 3 (¶ 6).

[15] *Id.* at 11 (¶ 47).

[16] Swappoint Trademark Registration, Ex. C. to Compl. – ECF No. 1 at 39.

[17] Compl. – ECF No. 1 at 13 (¶ 50); Swappoint Trademark Registration, Ex. C. to Compl. – ECF No. 1 at 36–40.

[18] Swappoint Trademark Registration, Ex. C. to Compl. – ECF No. 1 at 39.

goods and services."[19] Those goods and services range "from real estate to telecommunications to the provision of food and beverages and even legal services."[20]

Expensify owns common-law trademark rights in the "Karma Points" mark.[21] Expensify applied for a U.S. trademark registration in March 2020. It "narrowly focused its application to three distinct goods and services," including "incentive award programs for charity."[22] The application initially was allowed on June 2, 2020, and "Expensify continued its worldwide marketing campaign" using the mark.[23]

Expensify then proceeded internationally through the Madrid Protocol. It received an international trademark registration through the World Intellectual Property Organization. "Subsequently, the application entered the national stage of prosecution in New Zealand, Australia, the United Kingdom, Canada, and the European Union."[24] The parties filed trademark disputes in New Zealand, Australia, the U.K., and the European Union. When the complaint was filed, the disputes in Australia and New Zealand were ongoing.[25]

On March 22, 2022, Expensify filed specimens of use with the United States Patent and Trademark Office, to secure registration for its March 2020 trademark application.[26] On May 25, 2022, that office refused Expensify's U.S. trademark application, "in part because of an alleged likelihood of confusion with Swappoint's [Karmapoint] registration."[27]

---

[19] Compl. – ECF No. 1 at 12–13 (¶ 49).

[20] *Id.* at 3 (¶ 7).

[21] *Id.* (¶ 5).

[22] *Id.* at 9 (¶ 40); Expensify Trademark Appl., Ex. B to *id.* – ECF No. 1 at 28–35.

[23] Compl. – ECF No. 1 at 9–10 (¶ 41).

[24] *Id.* at 10 (¶ 41).

[25] *Id.* (¶¶ 41–43).

[26] *Id.* at 10–11 (¶ 44).

[27] *Id.* at 13 (¶ 51).

### 3. Other Allegations

The complaint also has allegations about why Expensify does not infringe the defendants' mark and why the defendants' U.S. trademark application was false or fraudulent.

First, the complaint alleges that its "Karma Points" mark on the one hand, and the defendants' "Karmapoint" mark on the other, have "widely divergent meaning[s]" as used and there is a "significant difference in the types of customers and users to whom each mark is directed."[28]

Second, the complaint alleges that the defendants' U.S. trademark application was false or fraudulent because the intended goods-and-services uses listed in the application are substantially similar to those listed in other trademark applications by affiliated brands owned by Umut Ertan. Those goods-and-services uses are very broad, allegedly far beyond what the defendants could hope to accomplish. For example, the breadth of the defendants' listed uses are comparable to the breadth of uses for Facebook, Youtube, and Instagram's registered marks. The defendants "knew [they] lacked intent to use the [Karmapoint] mark in the manner described in [their] application and/or recklessly disregarded the truth of [their] intended use."[29]

### 4. Relevant Procedural History

The complaint has three claims: (1) declaratory judgment of trademark non-infringement, 28 U.S.C. § 2201 & 15 U.S.C. § 1125; (2) cancellation of trademark registration for lack of a bona fide intent to use, 15 U.S.C. § 1119; and (3) false or fraudulent registration of a trademark, 15 U.S.C. § 1120.[30] The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[31] *Id.* § 636(c). The court held a hearing on March 9, 2023.

### STANDARD OF REVIEW

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

---

[28] *Id.* at 19–21 (¶¶ 73–80).

[29] *Id.* at 13–18 (¶¶ 52–68).

[30] *Id.* at 22–24 (¶¶ 81–95).

[31] Consents – ECF Nos. 9, 14.

bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (cleaned up). "Uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*. (cleaned up). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the bare allegations of the complaint.") (cleaned up).

## ANALYSIS

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). Expensify asserts personal jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k).[32] Rule 4(k)(2) has three requirements: (1) the claim against the defendants arises under federal law; (2) the defendants are not subject to the personal jurisdiction of any state court of general jurisdiction; and (3) exercising jurisdiction comports with due process. Fed. R. Civ. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1159. The parties do not dispute that the first two requirements are satisfied: the claims are federal trademark claims, and the defendants are not subject to the personal jurisdiction of any state court of general jurisdiction.

The remaining requirement is that the exercise of personal jurisdiction must comport with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007).

---

[32] Compl. – ECF No. 1 at 6 (¶ 28).

The court's "inquiry centers on whether exercising jurisdiction comports with due process," which requires that defendants have "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 125–26 (2014) (cleaned up). "The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the . . . [defendants] and the forum state, we consider contacts with the nation as a whole." *Holland Am.*, 485 F.3d at 461–62.

Expensify asserts specific jurisdiction. Specific jurisdiction exists when the suit arises out of or relates to the defendant's contacts with the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and thus is subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211–12. "If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up).

A plaintiff satisfies the first prong by "demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum or purposefully directed its activities at the forum," *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods*, 874 F.3d 1064, or engaged in "some combination thereof," *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam); *accord Impossible Foods, Inc. v. Impossible X LLC*, --- F.4th ----, 2023 WL 5921361, at *6 (9th Cir. 2023).

The court's application of the purposeful-direction or purposeful-availment test "turns on the nature of the underlying claims." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). When a defendant's conduct takes place primarily outside the forum state, the Ninth Circuit generally applies the purposeful-direction "effects" test and "look[s] to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *Impossible Foods*, 2023 WL 5921361, at *6; *Washington Shoe Co.*, 704 F.3d at 672–73 (the "effects" test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum") (cleaned up). It applies a purposeful-availment analysis when "the defendant has taken deliberate action within the forum state or has created continuing obligations to forum residents." *Impossible Foods*, 2023 WL 5921361, at *6 (cleaned up). "Thus, purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Id.* (cleaned up); *see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).

The trademark claims are tort claims. Courts often, but not always, apply a purposeful-direction test. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1089–91 (9th Cir. 2023) (in trademark case involving infringing sales of products from a website, applied the purposeful-direction test); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (same, in case involving infringing distribution of adult videos); *Impossible Foods*, 2023 WL 5921361, at *6 (applying both tests in a trademark declaratory-judgment case). The defendants argue only purposeful direction;

1  Expensify argues both purposeful availment and purposeful direction. As set forth above, prong one
2  can involve "some combination" of purposeful availment and purposeful direction. *Impossible*
3  *Foods, Inc.*, 2023 WL 5921361, at *6; *Yahoo! Inc.*, 433 F.3d at 1206. The cases "do not impose a
4  rigid dividing line between purposeful availment and purposeful direction." *Impossible Foods*, 2023
5  WL 5921361, at *6 (cleaned up) (collecting cases in a trademark declaratory-judgement case, where
6  the typical roles of plaintiff and defendant are reversed, and the defendant's acts were largely taken
7  within the state). In the end, "the purposeful direction and availment tests simply frame [the] inquiry
8  into the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not haled
9  into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (cleaned up).

Like *Impossible Foods*, this is a declaratory-judgment trademark case. The purposeful-availment and purposeful-direction tests both are relevant to whether the defendants' acts are random, fortuitous, or attenuated.

First, as to purposeful availment, "[t]o have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (cleaned up). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.

Second, purposeful direction exists if the defendant (1) commits an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Washington Shoe Co.*, 704 F.3d at 673; *Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (articulating this "effects" test). "However, referring to the *Calder* test as an effects test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong — the effects prong — holding that something more is needed in addition to a mere foreseeable effect." *Pebble Beach*, 453 F.3d at 1158 (cleaned up).

Then, as to prong two of the specific-jurisdiction test, the issue is whether the plaintiff's claims arise out of or are related to the defendants' contacts with the forum. *Ford Motor Co.*, 141 S. Ct. at

1026; *Ayla*, 11 F.4th at 983. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up). Ninth Circuit precedent before *Ford* required a showing of but-for causation for prong two. *Ayla*, 11 F.4th at 983 n.5 (collecting cases). But "[t]he Supreme Court announced in *Ford* that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts[] even absent causation." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023). Thus, a showing of but-for causation is permitted, but not required, to satisfy prong two. *Ayla*, 11 F.4th at 983 n.5 (collecting cases).

Here, the defendants' U.S. trademark registration supports personal jurisdiction.

First, as to prong one, "a single act can support jurisdiction" if it "create[s] a 'substantial connection' with the forum." *Axiom Foods*, 874 F.3d at 1068. Filing a trademark application "might be considered compelling evidence that [the defendant] has satisfied the purposeful availment or direction test." *Ayla*, 11 F.4th at 982 n.4. Courts have held that filing a trademark application is enough to establish an intentional act, the first requirement for personal jurisdiction. *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *11 (N.D. Cal. June 20, 2012); *see Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) (obtaining a U.S. patent was sufficient for prong one of specific jurisdiction; "[i]t stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States"); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (the Italian defendant company was "subject to personal jurisdiction based on its [trademark] application to the PTO"); *Impossible Foods*, 2023 WL 5921361, at *7 (in a declaratory-relief action, trademark-building activities were enough to satisfy the purposeful direction/availment prong).[33]

As in *Ubiquiti* and *Touchcom*, the defendants here obtained property interests from a U.S. agency and thus at least availed themselves of the laws of the United States. Moreover, as in

---

[33] *See* Opp'n – ECF No. 17 at 11–12 (collecting other cases).

ORDER – No. 22-cv-05720-LB   11

*Impossible Foods*, their acts were effectively directed to Expensify, which would feel the effects of restrictions on its trademark use. *Impossible Foods*, 2023 WL 5921361, at *7. And there are at least some commercialization efforts through the Apple App and Google Play stores. The defendants admit that their app and website have been accessed in the U.S. and thus that their trademark has been used in commerce in the U.S.[34] Alone, those might not be enough to show acts expressly aimed at the U.S. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997); *Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-cv-05666-LB, 2015 WL 5043296, at *8–11 (N.D. Cal. Aug. 26, 2015). The court's holding is that the trademark registration is enough. But these additional activities support the conclusion that the defendants' activities establish the purposeful availment/direction prong. *Impossible Foods*, 2023 WL 5921361, at *7; *AMA Multimedia*, 970 F.3d at 1209–10 (operating a passive website "in conjunction with something more — conduct directly targeting the forum — is sufficient" for express aiming) (cleaned up).

The defendants contend that the timeline of the parties' trademark prosecution shows that they did not know their trademark registration would cause harm to Expensify under the prong-one purposeful-direction analysis. At the time of their June 2020 trademark application, the defendants had a 2019 priority date from their Swiss application, and Expensify did not apply until March 2020 and then did not file use specimens until March 2022.[35] In *Ubiquiti*, the allegations established that the defendant knew that the trademark application would cause harm: "Kung's filing a trademark registration application for the word 'UBIQUITI' in the United States, allegedly knowing that the mark was identified and used by Ubiquiti, is an intentional act of purposeful direction sufficient to satisfy the first requirement for personal jurisdiction." 2012 WL 2343670, at *11. This is the defendants' best argument. But the requirement that the defendant knew harm would be suffered in the forum applies only to the purposeful-direction test. Under *Impossible Foods*, the ultimate issue is whether the defendant's contacts were "random, fortuitous, or

---

[34] Resp. to Reqs. for Admission, Ex. A to Pasquinelli Decl. – ECF No. 26-1 at 21–25; Opp'n to Mot. to Augment Record – ECF No. 27 at 5 ("[I]ndividuals in the United States can and have downloaded a mobile application bearing the KARMAPOINT trademark from Defendants' karmapoint.com website.").

[35] Reply – ECF No. 18 at 6–7.

attenuated." 2023 WL 5921361, at *6. The court's analysis rests primarily on purposeful availment, and a trademark registration is not attenuated from a later declaratory-judgment action.

Second, Expensify's claims arise out of and relate to the defendants' forum-related activities of registering their trademark. As discussed in the last section, the defendants' alleged broad assertion of their trademark rights is uncontested. That allegation forms the basis for the contested trademark rights and triggered this action. *Impossible Foods*, 2023 WL 5921361, at *5, *12; *Monster Cable*, 642 F. Supp. 2d at 1010 (personal jurisdiction based on application to the PTO). The declaratory-judgment context requires an assessment of the parties' respective rights. *Impossible Foods*, 2023 WL 5921361, at *12. As in *Impossible Foods*, Expensify's complaint explained why it was forced to take legal action: the defendants (like the defendants in *Impossible Foods*) made broad claims about their rights to the mark. *Id.*

Third, because the plaintiff established the first two prongs, the burden shifts to the defendants to establish "a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1211–12. To determine whether the exercise of jurisdiction is reasonable, the Ninth Circuit has identified seven factors:

> (1) The extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (cleaned up). The factors should be balanced against each other, and no single factor is dispositive. *Id.*

It is not unreasonable to require the defendants to defend a lawsuit about their registered trademark in the U.S. forum where they registered it. *See Impossible Foods*, 2023 WL 5921361, at *5, *14–15. The first factor favors Expensify: the defendants interjected themselves into the forum and should defend their property rights in it. The second factor favors the defendants, but any burden is mitigated at least in part by the availability of remote depositions. *Franey v. Am. Battery Sols., Inc.*, No. 22-cv-03457-LB, 2022 WL 4280638, at *10 (N.D. Cal. Sept. 15, 2022) (making this point). On this record, the third factor is neutral. The fourth factor favors Expensify: the U.S.

has an interest in adjudicating trademark rights in the forum of registration. The fifth and sixth factors also favor Expensify: it is efficient to resolve the dispute here, and Expensify resides here. As to the seventh factor, there is no other forum. In sum, the defendants have not carried their heavy burden on this prong.[36]

## CONCLUSION

The court denies the motion to dismiss. This disposes of ECF No. 13.

**IT IS SO ORDERED.**

Dated: September 28, 2023



LAUREL BEELER
United States Magistrate Judge

---

[36] The court also notes that the defendants addressed these factors only in their reply brief. Mot. – ECF No. 13 at 10–11; Reply – ECF No. 18 at 13–14.